Filed 3/12/25  S.C. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| S.C.,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF MADERA COUNTY,<br><br>    Respondent;<br><br>MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES/CHILD WELFARE SERVICES,<br><br>    Real Party in Interest. | F089105<br><br>(Super. Ct. Nos. MJP019087, MJP019107)<br><br><br>**OPINION** |

## THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Thomas L. Bender, Judge.

Fitzgerald, Alvarez & Ciummo and Shannon Scott for Petitioner.

No appearance for Respondent.

Regina A. Garza, County Counsel, and Christopher B. Dorian, Deputy County Counsel, for Real Party in Interest.

---

\*        Before Levy, Acting P. J., Franson, J. and De Santos, J.

Petitioner S.C. (mother) is the mother of R.C. and V.C. Mother filed a writ petition pursuant to California Rules of Court, rule 8.452 challenging an order setting a Welfare and Institutions Code section 366.26[1] permanency planning hearing as to the children. Mother contends the juvenile court abused its discretion by refusing to grant a continuance of the six-month review hearing in progress in order for mother to call another witness to testify as to her mental state. For the reasons provided below, we reject mother's challenge, deny the petition, and deny mother's request for a stay of the April 15, 2025, section 366.26 hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Referral*

The child, R.C., then two years old, was brought to the attention of the Madera County Department of Social Services (department) on December 13, 2023, when a Madera Police Officer contacted Donald C. (father)[2] outside his residence, after receiving a report that father was smoking methamphetamine in the presence of R.C. The officer performed several field sobriety tests and concluded that father was under the influence of a central nervous system stimulant. When confronted with this conclusion, father stated, "[Y]ou can tell I was trying to hide it." The officer also found father to be in possession on his person of a clear plastic wrap containing a white crystalized substance and a pipe containing black and white residue consistent with recent usage of methamphetamine. Father was holding R.C. at the time of the officer's encounter with him. The officer placed father under arrest for child endangerment, possession of methamphetamine, and possession of drug paraphernalia.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     Father is not a party to this petition.

It was discovered that, earlier on December 13, 2023, mother had been placed on a section 5150 hold and taken to a recovery facility. The social worker was told that mother was on "Abilify and Zoloft due to being bi-polar and dealing with stress, anxiety, and depression." Mother and father's home was found to be dirty, with clutter on the floor, food scattered on the coffee table, and there were cans of energy drinks along the side of the rail and on the floor of the porch. R.C. had access to the drug paraphernalia in the home as it was reported, via a police report, that during a FaceTime call father was heard telling R.C. not to grab the pipe as it was a meth pipe. R.C. was also observed to have red marks around her neck and bug bites on her back.

In a section 300 petition, the department alleged mother's mental illness and father's substance abuse affected their ability to provide care or set an appropriate plan of care for R.C. The department further alleged R.C. was at risk of harm as mother and father were unable to provide the child with adequate food, clothing, shelter, or medical treatment.

*Detention*

R.C. was detained at the detention hearing on December 21, 2023. Jurisdiction was set for January 4, 2024, and then for a contested hearing February 5, 2024. An addendum report was filed by the department prior to the February 5, 2024, contested hearing stating that father tested positive for amphetamine and methamphetamine on January 8, 2024.

*Jurisdiction*

At the contested jurisdiction February 5, 2024, R.C. was found to come within the provisions of section 300 and a disposition hearing was set for February 20, 2024.

*Disposition*

After numerous continuances, which also included detaining now newborn V.C., a contested disposition hearing for R.C. was set to coincide with V.C.'s jurisdiction hearing April 11, 2024. On that day, mother was present; father, who was in custody, was not.

Counsel for mother requested a contested disposition hearing, set for April 29, 2024, and eventually reset for May 6, 2024.

In its report for the May 6, 2024, hearing, the department recommended reunification services be ordered for mother and father, which for both included random drug testing, mental health and psychological evaluation and services, and anger management.  At the May 6, 2024, contested disposition hearing, mother requested family maintenance services.  The juvenile court ordered family reunification services and set a six-month review hearing for October 22, 2024.

*Psychological Evaluation for Mother*

On July 9, 2024, on an ex parte application by the department, the juvenile court appointed Dr. Michael Zimmerman, PhD, to conduct a psychological evaluation of mother and father.

*Six-Month Review Hearing*

The department's report for the October 22, 2024, six-month review hearing, recommended reunification services for mother and father be terminated and a section 366.26 hearing set.  Mother and father were reported to be living together, both unemployed and living on SSI (mother) and CalFresh (father) benefits.  Neither had a driver's license nor were able to operate a vehicle.  Father had three felonies and two misdemeanor cases pending.

Mother was seeing a psychiatrist and was prescribed medication for anxiety.  She completed a parenting class, but was terminated from anger management due to absences.  Mother did not think she needed anger management.  Mother attended six domestic violence classes, but missed three.  Mother claimed to be learning from the classes, although she was still in a relationship with father, who she acknowledged had abused her.  Mother consistently tested negative for all substances.

Dr. Zimmerman's psychological evaluation of mother was completed on October 7, 2024, and opined that mother, "as a result of an intellectual development disorder, is incapable of benefiting from reunification services to adequately care for her

4.

children .…"  Dr. Zimmerman diagnosed mother with mild intellectual development disorder and dependent personality disorder, and stated that the:

> "Results of this evaluation suggested that [mother] is positive for the following indicators of an intellectual developmental disorder: deficits in reasoning, problem-solving, planning, abstract thinking, and judgment. She has demonstrated deficits in basic housekeeping, infant safety needs, and community interactions. [¶] Results of this evaluation suggested that [mother] is positive for the following indicators of a dependent personality disorder: difficulty making everyday decisions without an excessive amount of advice and reassurance, needs others to assume responsibility for most major areas of her life, difficulty expressing disagreement with others for fear of loss of support, goes to excessive length to obtain support from others, to the point of volunteering to do things that are unpleasant, feels uncomfortable or helpless when alone because of exaggerated fears of being unable to care for herself, and is unrealistically preoccupied with fears of being left to take care of herself."

In addition, Dr. Zimmerman made the finding that "[mother's] willingness to expose her children to these dangers," in which he referred to father's substance use, "was attributed to her intellectual developmental disorder in conjunction with a dependent personality disorder." Further, Dr. Zimmerman identified that mother's failure to maintain a safe and clean environment for her children was "attributed to her intellectual disorder."

Father had been inconsistent in his mental health services, and then missed an assessment due to incarceration.  He was currently receiving mental health services. Father claimed to have completed anger management services while incarcerated, but also denied needing such services.  As of September of 2024, father was pending termination from a batterer's intervention program due to absences.  In March of 2024, father had been in an in-patient drug program, but left and was found inside mother's home, despite an active restraining order at the time.  Since that time, father had been incarcerated and, when released, missed an assessment.  In September 2024, father said he would continue substance abuse education but, as of October 2, 2024, he was terminated from the program due to absences.  Father drug tested since December of

2023—he received numerous positive tests, numerous no-shows from January 2024-May 2024, and was negative from June 2024–September 2024, although he had a number of no-shows during that time as well. On September 16, 2024, father tested positive for methamphetamine.

Father was evaluated by Dr. Zimmerman on September 13, 2024, and diagnosed with severe stimulant use disorder and physical spouse violence. Dr. Zimmerman reported that during the evaluation, father failed to complete the MMPI-2, due to falling asleep during the assessment. It was also reported that father failed to report facts regarding his history, such as his recent arrest, substance use, and denying concerns about domestic violence. Dr. Zimmerman's report stated that father's self-termination from services, such as substance abuse education, meant he still posed a high risk for endangering his children. Dr. Zimmerman's report stated the following:

> "[Father's] failure to complete the Substance Use Education Program suggests a poor prognosis for recovery from his methamphetamine use disorder. Less than 10% of methamphetamine users recover without treatment. Those who succeed in treatment typically require several committed treatment attempts before recovery is firmly established."

In addition, Dr. Zimmerman also made the findings that "[Father] appeared to be an unreliable reporter of facts during the evaluation," due to father's limited reporting on his recent arrests, "remission of methamphetamine use" and "denying concern about spousal physical abuse." Based on diagnosis and findings, Dr. Zimmerman concluded that father's severe methamphetamine use disorder rendered him incapable of benefiting from reunification services to adequately care for R.C. and V.C.

The scheduled October 22, 2024, hearing, was subsequently set for a contested hearing on December 9, 2024, with trial confirmation on November 18, 2024, on the issue of terminating reunification services.

At the November 18, 2024, confirmation hearing, mother indicated that she was intending to seek an additional psychological evaluation. Trial confirmation was continued to December 3, 2024.

At the December 3, 2024, hearing, mother's counsel made a formal request for an additional psychological evaluation, although no specific mental health professional was proffered for purposes of conducting this "second opinion" evaluation. The juvenile court denied the request, stating first that R.C. and V.C. were under the age of three and mother and father had already had six months to reunify. The court also stated that Dr. Zimmerman's opinion was not the only reason for the recommendation that reunification services be discontinued, citing the fact that mother and father were still together, and father was still testing positive for illicit substances and had not completed his services. The contested hearing was still scheduled for December 9, 2024.

At the December 9, 2024, hearing, mother testified that she thought R.C. and V.C. were safe coming home to her and father as father had not used drugs in "a couple [of] months." On cross-examination, she acknowledged that she had completed only her parenting classes but was dropped from the domestic violence program due to absences. While mother had had a restraining order against father, she testified that she had dropped it when he was out of custody because he had been "clean" and "was welcome to come home." Mother testified that she was not concerned that father was missing drug tests because he had been testing negative.

The social worker testified that mother had not been participating in any services since completing her parenting class in April of 2024, except for attending her therapy sessions. She also testified father had not completed any services. The social worker did not think mother and father could "turn things around" and complete enough services to satisfy the department's current concerns, particularly father's inconsistent drug testing and possible domestic violence when and if the children are returned, due to the additional stress they would add to the home.

The continued contested review hearing was held December 16, 2024. Mother again testified, this time saying that, if father relapsed, she would have him move out and "go to rehab."

Mother's therapist, Ewan Duarte, testified that he had been mother's therapist for two years and two months, and, when asked, stated that mother had not learned to set limits in any of her relationships. While he thought therapy had helped mother, he was not certain she would be able to tell father to leave if he relapsed. Duarte testified that mother's attendance at therapy sessions was "sporadic."

At the conclusion of testimony, mother's counsel requested a continuance to call "Dr. Jay" for additional testimony regarding mother's mental health. Mother provided no credentials for Dr. Jay. When asked for an offer of proof on the relevance of the proposed witness, counsel stated:

> "Yes, it's looking over the medical records. I see that she's been diagnosed with the mental intellectual disability that that is also on Dr. Zimmerman's report. So I wanted her opinion as to her as to [mother]'s ability to parent based on that diagnosis as well as her bipolar and anxiety, which Dr. Zimmerman did not diagnose her with and I wanted to clarify some of the medications she's on that it's -- that she tried other medications. Is this the right brand? She was on birth control. She was on other medications. There's a whole -- it's a whole four or five -- how many pages? It's like five pages regarding her medications and with the –." !

The juvenile court interrupted counsel and inquired as to when the proposed witness would be available. In response, mother's counsel stated, "I'm hoping to speak to Arthur[3] and find out which continent she's on," as Dr. Jay had moved out of the country but could likely participate via Zoom.

Counsel for the department objected to a continuance, citing the timeline of the case and the neutral opinion received by Dr. Zimmerman. Counsel also noted that mother's counsel had had an opportunity to get this information due to the number of continuances, but failed to do so. At one point, the juvenile court opined that this potential testimony would likely not be assisting the court, stating:

> " … I'll tell you why.Because at the review, the court is required to return the kid to the parent unless there's substantial risk of detriment. And based

---

**3**      Earlier identified as the supervisor at behavioral health.

on what I've heard, just from the parents not completing services alone.I can't return the kids. The parents are together.I mean in my mind there's some drug abuse.…  [¶] … [¶] … [T]he parents haven't even completed their services.So I can't return [the children].So the next -- the next question is the Court has to answer is whether or not the court can or continue with [family reunification] to the 12th month because we're at a six-month review but -- and the kids were removed at different times.But I believe the 12-month review is -- one of the reviews is in February and I believe the other one is early May.…  [¶] … [¶]  So the question I have then is whether or not I should continue services or not.  So coming back around to this particular testimony, it's not particularly helpful.  To answer the final question and whether or not I should continue [family reunification]."

The juvenile court subsequently denied mother's request for a continuance, stating it had made a record "as to why."  It then terminated reunification services and set a section 366.26 hearing for April 15, 2025.

## DISCUSSION

Mother contends the court abused its discretion in denying her request for a continuance of the six-month review hearing.[4]  We disagree.

Continuances in dependency proceedings "shall be granted only on a showing of good cause." (§ 352, subd. (a)(2).)  " '[T]ime is of the essence in offering permanent planning for dependent children.' "  (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187)  Thus, continuances in dependency cases "should be difficult to obtain."  (*Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.)  Indeed, courts have interpreted section 352 as embodying "an express discouragement of continuances." (*In re Karla C.* (2003) 113 Cal..App.4th 166, 179.)  "A reviewing court will reverse an order denying a continuance only upon a showing of an abuse of discretion."  (*In re Gerald J., supra,* at p. 1187.)  An abuse of discretion is shown when the trial court has made " ' "an arbitrary, capricious, or patently absurd determination." ' "  (*In re Mark V.* (1986) 177 Cal.App.3d 754, 759.)

---

**4**      While mother frames the denial of her motion for a continuance in constitutional terms, as we discuss, the denial of a continuance of a section 366.21 status review hearing is reviewed under an abuse of discretion standard.

9.

Mother's mental health and ability to benefit from reunification services was at issue at the six-month review hearing in which the department recommended termination of such services. Mother's argument is that she should have been allowed a continuance in order to subpoena the testimony of Dr. Jay, whom mother describes on appeal as her "treating doctor."

However, as discussed above, mother had ample time to provide such evidence or call Dr. Jay as a witness. The psychiatric evaluation of Dr. Zimmerman, who opined that mother was not able to benefit from such services, was completed as of October 7, 2024, and filed October 11, 2024, prior to the scheduled six-month review hearing originally set for October 22, 2024.

At the November 18, 2024, trial confirmation hearing, mother's counsel indicated that she intended to seek an additional psychological evaluation of mother. Trial confirmation was continued to December 3, 2204. On that date, mother's counsel made a request for an additional psychological evaluation, but did not proffer a specific mental health professional. The juvenile court denied this request, stating:

> "The other reason is that the opinion of Dr. Zimmerman is not the only reason for the recommendation [to terminate reunification services]. There's other reasons, those include Mom and Dad are still together, Dad was still testing positive, Dad still hasn't completed all his services. So there's additional reasons other than Dr. Zimmerman's opinion. So anyway, I'm just inclined to deny that request, confirm the hearing for the 9th."

At the session of the contested hearing held on December 9, 2024, mother's counsel first examined mental health professional Duarte, who opined that mother might not be able to keep father out of the home if he was using drugs, as she was unable to set boundaries. Counsel then orally requested a continuance to call "Dr. Jay" for additional testimony regarding mother's mental health but provided no credentials for Dr. Jay. When asked for an offer of proof as to the relevance of the proposed witness, mother's counsel stated, in essence, that Dr. Jay might opine on mother's ability to parent R.C. and V.C. and to clarify some of the medications mother was on. Counsel was not able to

provide or state when Dr. Jay might be available, only that they were still trying to find out which "continent" she was on.

Based on the foregoing, we find the juvenile court acted within its authority when it denied mother's request for what amounted to an open-ended continuance to secure the possible attendance of an expert witness, which the court described as "not particularly helpful." Section 352, subdivision (a)(2) clearly requires continuances to be limited to a specific duration of time demonstrated to be necessary, which counsel never even attempted to provide in this instance. Mother cannot demonstrate prejudice as the record is devoid of any specifics regarding the proposed expert testimony, and the juvenile court additionally stated its belief that the proposed evidence would not be beneficial to the trier of fact in making its ruling, especially since mother and father, who were living together, had not completed or made an adequate effort to complete any of the reunification services offered them.

We find no abuse of discretion on the part of the juvenile court in denying mother's request for a continuance.

## DISPOSITION

The petition for an extraordinary writ is denied, as is the request for a stay of the April 15, 2024, section 366.26 hearing. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

11.